UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                               :
UNITED STATES OF AMERICA       :
                               :   Crim. Nos. 07-1018 (NLH)
                               :              09-0375  (NLH)
     v.                        :
                               :
ARTHUR BOYCE,                  :   OPINION
                               :
          Defendant            :
_____:
```

**APPEARANCES**:

PETER GOLDBERGER, ESQ.
50 RITTENHOUSE PLACE
ARDMORE, PA 19003-2276

    *Counsel for Arthur Boyce*

JASON M. RICHARDSON
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET
P.O. BOX 1427
CAMDEN, NJ 08101

    *Counsel for the United States*

**Hillman**, **District Judge**

    Before the Court are Arthur Boyce's ("Defendant") Motions for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  (2007 Matter, ECF 30; 2009 Matter, ECF 22).[1]  For the reasons expressed below, Defendant's Motions will be denied.

---

[1] References to the "2007 Matter" refer to the prosecution docketed at 1:07-cr-01018-NLH (D.N.J.).  References to the "2009 Matter" refer to the prosecution docketed at 1:09-cr-00375-NLH (D.N.J.).

Also before the Court is Defendant's Motion for Clarification (2009 Matter, ECF 28) of the Court's December 1, 2021 Order (2009 Matter, ECF 27).  The Court will address that motion below as well.

**Background**

On December 18, 2007, Defendant's criminal matter from the Eastern District of Pennsylvania was transferred to this District.  (2007 Matter, ECF 1).  At the time of transfer, Defendant was subject to federal supervised release after convictions for possession of cocaine with intent to distribute and possession of a firearm in furtherance of drug trafficking.  (Id.)  On January 24, 2008, the Office of Probation ("Probation") petitioned the Court for the issuance of a summons and arrest warrant for violation of the conditions of Defendant's term of supervised release in that he had committed multiple local crimes, had not reported the convictions to Probation, and did not pay certain fines.  (2007 Matter, ECF 2).  The Court issued a summons on January 31, 2008.  (Id.)  On February 18, 2008, Defendant pleaded guilty to three of the violations Probation outlined in its petition.  (2007 Matter, ECF 6).  On March 6, 2008, the Court sentenced Defendant to 5

months of imprisonment and a 2-year term of supervised release. (2007 Matter, ECF 7).

Thereafter, on January 30, 2009, the Government filed a criminal complaint in a new matter, the 2009 Matter, charging Defendant with possession with intent to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. 841(a)(1) and (b)(1)(A). (2009 Matter, ECF 1). The complaint stemmed from incidents between February and April 2008, a time period that encompassed the resolution of the supervised release violation petition in the 2007 Matter. (Id.) On May 20, 2009, Defendant entered a plea of guilty to possession with intent to distribute 5 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (2009 Matter, ECF 13, 11).

Concurrently, in February 2009, in the 2007 Matter, Probation petitioned the Court for the issuance of another summons and arrest warrant for violation of the conditions of Defendant's term of supervised release based on the conduct in the 2009 Matter. (2007 Matter, ECF 11). The Court issued a warrant. (Id.) At the May 20, 2009 hearing in which Defendant pleaded guilty in the 2009 Matter, Defendant also entered a plea of guilty to violation of the terms of his supervised release in the 2007 Matter. (2007 Matter, ECF 16, 17).

On October 16, 2009, Defendant was sentenced in both the 2007 Matter and the 2009 Matter. (See 2007 Matter, ECF 25). In

3

connection with the 2007 Matter, the Court sentenced Defendant to a term of 55 months of imprisonment.[2] (2007 Matter, ECF 20). In connection with the 2009 Matter, the Court imposed a 197-month term of imprisonment followed by a 5-year term of supervised release. (2009 Matter ECF 15). The two terms of incarceration were to run consecutively. (2007 Matter, ECF 20).

On August 3, 2010, the Fair Sentencing Act (the "FSA") was enacted to reduce the disparity between statutory penalties for trafficking crack cocaine and powder cocaine. Pub. L. No. 111-220, 124 Stat 2372 (2010). The FSA raised the drug quantities required to trigger certain minimum penalties pursuant to 21 U.S.C. § 841, the statute under which Defendant was convicted. The provisions of the FSA were later made retroactive in 2018 with the passage of § 404 of the First Step Act ("First Step

---

[2] The Court arrived at a term of 55 months of incarceration by looking to U.S.S.G. § 7B1.4(a) and determining that Defendant had a criminal history of V and that he had committed a Grade A violation. (2007 Matter, ECF 23 at 10:18-23). The Court acknowledged that the recommended range of incarceration was 46 to 57 months and that the statutory cap on Defendant's term of incarceration was 60 months. (Id. at 10:23- 11:6); see also 18 U.S.C.A. § 3583(e)(3) (stating that the maximum term of incarceration upon revocation of supervised release for a class A felony is 5 years). The Court noted that it had previously imposed a 5-month term of imprisonment for Defendant's prior violation of his supervised release and therefore that the maximum term that it could impose was 55 months. (2007 Matter, ECF 23 at 11:5-9).

Act"). Pub. L. No. 115-391, 132 Stat. 5194 (2018); United States v. Easter, 975 F.3d 318, 320 (3d Cir. 2020).

On January 14, 2021, in the 2009 Matter, Defendant filed a motion for compassionate release under First Step Act 18 U.S.C. 3582(c)(1)(A) based in part on COVID-19.  (2009 Matter, ECF 22). Defendant filed the same motion in the 2007 Matter the next day. (2007 Matter, ECF 30).  On March 8, 2021, the Government filed a letter indicating that it did not oppose the motions.  (2009 Matter, ECF 23).  Defendant filed a supplemental motion in the 2009 Matter on May 3, 2021, arguing that a sentence reduction was warranted pursuant to § 404 of the First Step Act and the FSA.[3]  (2009 Matter, ECF 25).  The Government filed a motion in support of the supplemental motion on June 7, 2021.  (2009 Matter, ECF 26).

On December 1, 2021, the Court reduced Defendant's sentence in the 2009 Matter only from 197 months of incarceration to 154 months of incarceration.  (2009 Matter, ECF 27).  Defendant filed a motion in the 2009 Matter on December 7, 2021, seeking clarification of the Court's December 1, 2021 Order regarding whether it implicitly denied Defendant's motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and whether it implicitly denied any application by Defendant for

---

[3] Defendant did not file the supplemental motion in the 2007 Matter.

5

reduction of his sentence in the 2007 Matter under § 404 of the First Step Act and the FSA. (2009 Matter, ECF 28).[4]

The Court now addresses Defendant's Motions for Compassionate Release and his Motion for Clarification regarding the import of the December 21, 2021 Order on his sentence in the 2007 Matter.

**Discussion**

   A. **Legal Standard for Compassionate Release**

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals."  Id.  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate

---

[4] A liberal reading of Defendant's motion for resentencing under § 404 of the First Step Act and the FSA which was filed in the 2009 Matter suggests that it is meant to encompass the sentence in the 2007 Matter (2009 Matter, ECF 25), though it should have also been filed on the docket for the 2007 Matter.

6

release." United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(C)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if after finding extraordinary and compelling reasons warrant a reduction, that such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission and that the applicable sentencing factors under § 3553(a) warrant a reduction. United States v. Pabon, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020).

### B. Analysis of Motions for Compassionate Release

#### a. Defendant has satisfied the exhaustion requirements

Defendant applied to the BOP for compassionate release and was denied relief on October 6, 2020. (2009 Matter, ECF 22 at 3). The Government does not dispute that Defendant has exhausted his administrative remedies. (2009 Matter, ECF 23 at 1). Thus, the Court deems the administrative exhaustion requirement for his motions to be satisfied.

#### b. Defendant fails to establish "extraordinary and compelling" reasons for his release

Though it is a close call given the severity of Defendant's conditions, the Court holds that Defendant has not established "extraordinary and compelling reasons" for his release.

Defendant argues that his pre-existing medical conditions place him at a high risk for complications from COVID-19. Specifically, Defendant effectively argues that he is at an increased risk for an adverse outcome if he contracts COVID-19 due to his underlying health conditions. (2009 Matter, ECF 22 at 6-7). Defendant describes the conditions as being blind, being confined to a wheelchair, suffering from paranoid delusions, and having hypertension. (Id.) Defendant also argues that his age, 56 years-old at the time of the penning of this Opinion, puts him at an increased risk for suffering negative outcomes if he contracts COVID-19. (Id. at 7). As stated above, the Government does not contest that Defendant presents "extraordinary and compelling reasons" for his release. (2009 Matter, ECF 23 at 2).

The Court does not take lightly the difficulties that Defendant's medical conditions place on him particularly while in prison. But Defendant has not sufficiently shown how his conditions are exacerbated by COVID-19 or how they present materially different circumstances than those the Court considered when it sentenced him. Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to

8

curtail the virus's spread."); United States v. Hunter, 12 F.4th 555, 570 (6th Cir. 2021) (holding that facts that existed at the time of sentencing could not be considered "extraordinary and compelling"); Chu v. Hollingsworth, 2014 WL 3730651, at *5 (D.N.J. July 28, 2014) (same).

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. U.S.S.G. § 1B1.13, cmt. n.1(A).[5]  The Court cannot say that Defendant suffers from conditions that fall into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of

---

[5] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  That said, the Third Circuit has approved a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners. United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons.").  Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different.  As set forth in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

9

the types of illnesses that might constitute "extraordinary and compelling circumstances." Id.  It also cannot say that Defendant's conditions substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id.  Though the Court accepts that many of his Defendant's conditions are permanent and make his incarceration challenging, the Court does not find sufficient evidence in the record to show that he cannot care for himself.  (See 2007 Matter, ECF 30-1 at 1-2 (BOP decision denying Defendant's request for compassionate release and noting that he was able to perform activities of daily living independently)).  At Defendant's October 16, 2009 sentencing hearing, the Court noted that Defendant's situation, in part based on his medical conditions, would make life in the prison environment "harder" and imposed a sentence accordingly.  (See 2007 Matter ECF 23 at 27:21-23).  The Court again was cognizant of Defendant's medical conditions when it resentenced Defendant last year.  In the absence of specific evidence showing a more heightened risk, the Court declines to find that Defendant's medical conditions, even with the possibility of contracting COVID-19, warrant his release or an even lower sentence.

Defendant's vaccination status is unclear to the Court.  However, FCI Butner Medium I, where Defendant is housed, has

10

mitigation efforts aimed at controlling the spread of the coronavirus that appear to be effective.  Currently, FCI Butner Medium I has no inmate and six staff positive tests.[6]  Over the course of the pandemic 11 inmates have died as a result of infection by COVID-19 and 144 of the current inmates have recovered from positive infections.[7]

In addition, according to the BOP, 3,675 inmates at FCC Butner have been fully vaccinated out of a population of 3,929.[8]  Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court finds that the vaccination rate inside FCC Butner weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his conditions effectively at a Medium Security facility, FCI Butner Medium I,[9] does not present "extraordinary and compelling

---

[6] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited June 9, 2022).

[7] Id.

[8] Id.; FEDERAL BUREAU OF PRISONS, LOCATIONS, https://www.bop.gov/locations/list.jsp (last visited June 9, 2022).  These figures encompass the 4 Butner facilities operated by the BOP.

[9] The Court notes that there are four BOP facilities located in the same complex in Butner, North Carolina.  Defendant is housed in one of two Medium Security facilities not the adjacent medical facility suggesting his condition does not require the resources of a hospital setting.

reasons" supporting his release. The effective management of Defendant's conditions by the BOP and FCI Butner Medium I's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents "extraordinary and compelling reasons" for his release that the Court has not previously considered in sentencing Defendant.

### c. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction. Here, they do not.

The Court sees no reason to disturb the overall sentence it imposed after the retroactive application of the FSA in the 2009 Matter. Specifically, Defendant was involved in trafficking a significant amount of cocaine and did so repeatedly despite having been convicted of doing so more than once. 18 U.S.C. § 3553(a)(1). Indeed, in imposing Defendant's original sentences, the Court considered Defendant's repeated violations of the trust of the Court and the quantity of drugs that had been trafficked. 18 U.S.C. § 3553(a)(2)(A). Deterrence, both specific and general, also militates against release given the magnitude of drugs at issue and the fact that Defendant has committed multiple offenses in the past. Id. at § 3553(a)(2)(B). Defendant's repeated flouting of the law

12

suggests that recidivism is still an active concern in this case and underscores the need to protect the public from further crimes that he may commit. Id. at § 3553(a)(2)(C).

The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated and that there has been a material difference in the § 3553(a) factors that animated his originally imposed sentence as modified by the First Step Act and the retroactive application of the FSA. Thus, the Court declines to grant Defendants motions for compassionate release in both the 2007 and 2009 Matters. (2007 Matter, ECF 30; 2009 Matter, ECF 32).

C. **Legal Standard for Reduction of Sentence Per the FSA**

A court that has sentenced a defendant for a "covered offenses" prior to the enactment of the FSA may resentence a Defendant in accordance with the FSA's penalty changes per § 404 of the First Step Act. See Easter, 975 F.3d at 323 (discussing motions made under § 404(b). A court in analyzing such a motion must consider the § 3553(a) factors. Id. at 324. A court may only consider changes in facts that go to the § 3553(a) factors that were not in play at the time of original sentencing. United States v. Murphy, 998 F.3d 549, 555 (3d Cir. 2021), as amended (Aug. 4, 2021) ("This new assessment must include any new, relevant facts that did not exist, or could not reasonably

13

have been known by the parties, at the time of the first sentencing (*e.g.*, a defendant's post-sentencing rehabilitation or new health problems). But the resentencing court cannot reach beyond those circumstances to reconsider the facts as they stood at the initial sentencing.") (internal citations omitted).

Notably, the decision by a court to reduce a sentence under § 404(b) is discretionary and nothing requires a court to do so. United States v. Bullock, No. 20-3003, 2021 WL 4145233, at *2 (3d Cir. Sept. 13, 2021) ("Action by a district court under the First Step Act is discretionary and does not entitle movants like Bullock to plenary resentencing or a resentencing hearing."); Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018) (providing, in § 404(c), that "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

**D. Analysis of Motion to Reduce Sentence in 2007 Matter Per the FSA**

The Court takes this opportunity to explain why it declined to reduce Defendant's sentence of 55 months in the 2007 Matter when it issued its Order on December 1, 2021. (2009 Matter, ECF 27). At the outset, Defendant's sentence is for his violation of the terms of his supervised release. (2007 Matter, ECF 20). In determining whether Defendant is eligible for resentencing under the First Step Act in connection with the sentence imposed

for the revocation of his supervised release, a court must look to the underlying offense of conviction. Johnson v. United States, 529 U.S. 694, 700 (2000) (explaining that revocation of supervised release is not a new punishment but is a penalty for the underlying offense of which a defendant was convicted); United States v. Cook, 775 F. App'x 44, 50 (3d Cir. 2019) ("[A] revocation sentence is not a stand-alone criminal punishment. Rather, conditional supervised release and reimprisonment for violating it are part of the original sentence.").

Defendant's underlying offense in the 2007 Matter was under 21 U.S.C. § 841(a)(1) and (b)(1(C). (2007 Matter, ECF 9). The Supreme Court has held that defendants sentenced under those provisions are not convicted of a "covered offense" that would make them eligible for resentencing. Terry v. United States, 141 S. Ct. 1858, 1864 (2021) ("In light of the clear text, we hold that § 2(a) of the Fair Sentencing Act modified the statutory penalties only for subparagraph (A) and (B) crack offenses—that is, the offenses that triggered mandatory-minimum penalties."); see also Bullock, No. 20-3003, 2021 WL 4145233, at *1 (3d Cir. Sept. 13, 2021) (discussing Terry's holding that the First Step Act did not modify penalties for violations of § 841(b)(1)(C)). Because Defendant was not eligible for a sentence reduction

15

under § 404(b), the Court did not and cannot reduce the 55 months of incarceration imposed in the 2007 Matter.[10]

**Conclusion**

For the reasons set forth above, Defendant's Motions for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (2007 Matter, ECF 30; 2009 Matter ECF 22) will be denied.  This Opinion also resolves Defendant's Motion for Clarification (2009 Matter, ECF 28) of the Court's December 1, 2021 Order (2009 Matter, ECF 27).  An accompanying Order will issue.

Dated: June 13, 2022         s/   Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.

---

[10] Thus, it was unnecessary for the Court to weigh the § 3553(a) factors.  Even if the Court were to consider such factors in assessing a § 404(b) motion in the 2007 Matter, it would still impose the same sentence today.  As the Court noted above, the overall aggregate sentence of 209 months represents a sentence sufficient but not greater than necessary after considering all the statutory benefits available to Defendant and the overall record before the Court.

16